UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMILIO SAN MIGUEL-ALSUP,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 13-cv-06074 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 12, 18, 19).

After considering and reviewing the record, the Court concludes that the ALJ did not provide any rationale for failing to credit some of the opinions from an examining

doctor, even though the ALJ relied on this examining doctor's opinion when formulating the RFC.

Because this error is not harmless, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, EMILIO SAN MIGUEL-ALSUP, was born in 1992 and was less than one year old on the alleged date of disability onset of August 11, 1992 (*see* Tr. 172-74). Although at his administrative hearing plaintiff sought to amend the alleged onset date to May 1, 2004 (*see* Tr. 23, 49-50), the ALJ failed to amend the alleged onset date (*see* Tr. 25, 32-33).

According to plaintiff's adoptive mother, plaintiff "was exposed to crack, cocaine and alcohol during the pregnancy [and] . . . . [plaintiff] was removed from his biological mother at birth" (*see* Tr. 388). Plaintiff experienced physical difficulties "almost immediately" (*see id.*). Plaintiff "had a g-tube at five months due [to] a swallowing disorder and the aspiration [and] remained on the g-tube until he was six years old due to failure to thrive" (*see id.*). According to his adoptive mother, plaintiff "was an extremely anxious baby[,] didn't like to be around people [and] was happiest alone in his crib" (*see id.*). Plaintiff also suffered physical abuse from his "other mother, for about 9 years" (*see id.*).

Despite this difficult beginning, plaintiff finished high school, but is a half credit short of receiving his actual graduation certificate (Tr. 45). Plaintiff does not have work

experience at paying jobs because he has been in school and was nineteen years old at the time of the hearing (Tr. 50).

According to the ALJ, plaintiff has at least the severe impairments of "attention-deficit hyperactivity disorder (ADD), borderline intellectual functioning, and learning disorder (20 CFR 404.1520(c))" (Tr. 25).

At the time of plaintiff's hearing, he was living in a house with his mother, two sisters, four brothers and sometimes his nephew (Tr. 44).

## PROCEDURAL HISTORY

Plaintiff's application for child's insurance benefits pursuant to 42 U.S.C. § 423 of the Social Security Act was denied initially and following reconsideration (*see* Tr. 89-98, 99-109). Plaintiff's requested hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on July 25, 2012 (*see* Tr. 39-87). On August 15, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 20-38).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ accepted a medical source opinion, but failed to include the limitations it established in her residual functional capacity finding; (2) Whether or not the ALJ failed to provide legally sufficient reasons for rejecting other medical opinions; (3) Whether or not the ALJ failed to provide germane reasons for rejecting lay opinions; and (4) Whether or not the ALJ failed to meet her burden of showing that the plaintiff was disabled at step five of the sequential evaluation process (*see* ECF No. 12, p. 1). Because the Court concludes that issue number one is dispositive, other issues will not be addressed in full.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Whether or not the ALJ accepted a medical source opinion, but failed to include the limitations it established in her residual functional capacity finding.**

Plaintiff contends that although the ALJ gave great weight to the opinions of examining psychologist, Dr. Andrea Shadrach, Psy.D. and explicitly indicated reliance on them when formulating the RFC (*see* Tr. 30, 31), the ALJ nevertheless failed to include all of Dr. Shadrach's opinions into plaintiff's RFC (*see* Opening Brief, ECF No. 12, pp. 5-8; Tr. 27, 30). Defendant contends that the ALJ reasonably adopted the functional limitations assessed by Dr. Shadrach into plaintiff's RFC (*see* Response, ECF No. 18, pp. 4-6).

Dr. Shadrach examined plaintiff on June 4, 2011 (*see* Tr. 28, 387-95). She completed a history, interview, mental status examination and other objective tests (*see* Tr. 387-95).

As noted by the ALJ, plaintiff demonstrated some difficulties (*see id.*; Tr. 28). The ALJ summarized Dr. Shadrach's opinion as follows:

> Essentially, she observed that he has relative strengths and relative weaknesses, but has done well compensating for the weaknesses, although he has not eliminated them completely. The residual functional capacity [RFC] reflects these observations. The medical evidence of record supports Dr. Shadrach's nuanced opinions and I give them great weight.

(Tr. 30).

Here, the ALJ indicates explicit reliance on Dr. Shadrach's opinion (*see id.*). Similarly, when rejecting the opinion of Ms. Nancy Corley-Wheeler, ARNP, the ALJ gave such opinion some weight, but disagreed with the ultimate conclusions therein and chose to "rely instead on the opinions of Drs. Mayers and Shadrach" (*see* Tr. 31). However, the Court concludes, as discussed below, that the ALJ did not accommodate all of Dr. Shadrach's opinions into plaintiff's RFC.

First, based on the record, the ALJ's finding that Dr. Shadrach exaggerated her conclusions is not based on substantial evidence in the record as a whole (*see* Tr. 30). The ALJ's reference to Dr. Shadrach's discussion of plaintiff's IQ score does not substantiate any finding of exaggeration.

Plaintiff notes that the ALJ's decision "recognizes that [plaintiff] had made great strides towards gaining independence [and] it conspicuously acknowledges that his weaknesses are still present" (*see* Opening Brief, ECF No. 12, p. 6). However, plaintiff argues that the ALJ's RFC "disregards Dr. Shadrach's opinion that [plaintiff] still struggles with depressed mood, has cognitive processing deficits (working memory and processing speed), and inability to maintain focused attention, and significant memory issues" (*see id.* (*citing* Tr. 392)). According to plaintiff, the ALJ did not discriminate

between Dr. Shadrach's opinions regarding plaintiff's current functioning (at that time) and Dr. Shadrach's opinions about plaintiff's expected future performance ability (*see id.*, pp. 6-8; Reply, ECF No. 19, pp. 2-3). Based on a review of the record, the Court agrees with plaintiff's argument.

In the discussion/prognosis section, Dr. Shadrach noted that plaintiff was "willing to receive treatment for mental and physical health disorders" and that he was "willing to consider psychotherapy again" (*see* Tr. 392). Dr. Shadrach indicates her opinion that plaintiff's "learning disorders will likely improve to functional levels with special education services" and opined that he would "need to establish a therapeutic relationship with a counselor" (*see id.*). She noted that plaintiff "will also need to learn effective coping strategies for the challenges of adult life" (*see id.*). She also opined that plaintiff was a good candidate for his school district's Transitional Program as it would "provide job training and ensure that he has the necessary functional skills to live and work independently or with minimal supervision" (*see id.*). Dr. Shadrach noted that plaintiff wants to work and feels that he needs to do so (*see id.*).

In her medical source statement, regarding current functioning, Dr. Shadrach opined that plaintiff "is struggling with depressed mood; an inability to maintain focused attention; and poorly developed academic skills" (*see id.*). Similarly, Dr. Shadrach opined that plaintiff's ability to maintain sustained concentration and persistence "is poor" (*see id.*). After noting plaintiff's various test results, Dr. Shadrach indicated her opinion that some of his results suggest "underlying concentration deficits" (*see id.*). She also noted that plaintiff was "receiving special education services for all core academics" (*see* Tr.

393). Finally, Dr. Shadrach opined that plaintiff's "employment opportunities will likely be limited to [those] that are concrete with self-evident demands" (*see id.*).

It is clear that Dr. Shadrach opined that at some point in time, with various limitations, plaintiff would be capable of employment. However, it also is clear that Dr. Shadrach opined that various services and treatment were required before that point in time would be reached and that plaintiff currently has, and would likely continue to have certain limitations that the ALJ did not incorporate into plaintiff's RFC (*see, e.g.*, Tr. 392-93).

A review of the ALJ's rejection of another opinion also indicates that the ALJ did not evaluate the medical evidence thoroughly regarding if and when plaintiff had received sufficient special education services and training to allow him to be able to function sufficiently at work or at the level opined by the examining doctors relied on by the ALJ. The ALJ rejected the opinion of plaintiff's high school special education teacher, Ms. Nicole Kimmerling (*see* Tr. 31-32). In doing so, the ALJ similarly did not indicate explicit awareness of the fact that Ms. Kimmerling's opinion regarding plaintiff's ability to work were about what plaintiff would be capable of some time in the future (*see id.*; Tr. 412).

Ms. Kimmerling indicated her opinion that the special education assistance that plaintiff was receiving were "essential to his success" (*see* Tr. 412). She also indicated her opinion that "[i]n the future, when considering a work environment appropriate to [plaintiff]'s needs and limitations, I believe he would function best in a supported work environment or sheltered workshop situation where he would have an understanding

supervisory staff" (*see id.*). In her written decision, the ALJ does not acknowledge that this opinion about what plaintiff requires in order to function best in a work environment is regarding an indefinite time in the future (*see id.*).

Based on the relevant record and for the reasons discussed, the Court concludes that the ALJ failed to discriminate sufficiently between Dr. Shadrach's opinions regarding plaintiff's current functioning versus plaintiff's expected potential functioning in the future. The Court notes that the ALJ referred to Dr. Shadrach's opinions as "nuanced:" If the ALJ finds the opinions insufficiently clear or finds them ambiguous, the ALJ has an independent duty to develop the record further (*see* Tr. 30). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))).

The Court concludes that the ALJ's determination of plaintiff's RFC did not capture all of the limitations opined by Dr. Shadrach for the entire period being assessed (*see* Tr. 27). Further discussion and evaluation of the medical evidence provided by Dr. Shadrach is required, as is further discussion regarding when and if plaintiff's ability to function in a competitive work environment reached the level opined in the ALJ's RFC.

Plaintiff argues that this is not harmless error because the limitations described by Dr. Shadrach were not included in plaintiff's RFC and they are incompatible with competitive work (*see id.* (*citing* Tr. 84-85)). At plaintiff's administrative hearing, the vocational expert ("VE") testified that an individual with plaintiff's RFC who took unscheduled breaks and failed to do the assigned tasks, or who required extra supervision

to stay on task, would not be able to sustain competitive employment (*see* Tr. 84-85). Following further questioning, the vocational expert testified that being off task 15% or more of the time would render plaintiff incapable of competitive employment (*see* Tr. 86). The VE also testified that an individual who was already trained to do simple, repetitive tasks, but required redirection from a supervisor on an average of two times per day, would be rendered incapable of competitive employment (*see id.*).

Based on a review of the record as a whole, the Court concludes that the ALJ's failure to discriminate exactly when plaintiff's RFC reached a level supporting employability is not harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

**(2) Whether or not the ALJ failed to provide legally sufficient reasons for rejecting other medical opinions.**

Because the Court has concluded that the ALJ erred when evaluating the medical evidence, *see supra*, section 1, all of the medical evidence should be evaluated anew. This includes the evidence provided by other medical sources, that is, lay sources, such as Ms. Nicole Kimmerling.

**(3) Whether this matter should be reversed and remanded with a direction to award benefits or for further administrative proceedings.**

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292). Here, it is not clear from the record that the ALJ would be required to find plaintiff disabled for the entire duration of alleged disability even if the inappropriately discredited evidence were to be credited in full. Further evaluation of the opinion of Dr. Shadrach and the remainder of the medical evidence is required.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 31st day of July, 2014.

J. Richard Creatura
United States Magistrate Judge